## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LUIS GARCIA, | |
| Plaintiff | CIVIL ACTION NO. 3:25-CV-01090 |
| v. | (MEHALCHICK, J.) |
| BRUTTS, *et al.*, | |
| Defendants. | |

## <u>MEMORANDUM</u>

Plaintiff Luis Garcia has filed a *pro se* complaint against nine defendants, arising from an incident in which he was handcuffed during a cell search at SCI-Frackville. Because the complaint only states a viable claim against Defendant Officer Mayo, Garcia will be granted 30 days to file a proposed amended complaint, or the case will proceed against Mayo only.

### I.    BACKGROUND AND PROCEDURAL HISTORY

Garcia's complaint and attached supplement (Doc. 1, Doc. 1-1) allege as follows: On September 20, 2024, at approximately 5:45-6:00 a.m., four "John Doe" officers entered Garcia's cell at SCI-Frackville, handcuffed his hands behind his back, and moved him to the dayroom of his unit for approximately four hours, so his cell could be searched by the DOC's Bureau of Internal Investigation. Garcia was forced to wait in the dayroom wearing only his shorts and shower shoes, and was denied breakfast.

At some time after 8:00 a.m., Garcia asked Defendant Mayo to use the bathroom and for Mayo to "double lock"[1] his handcuffs because they were cutting off the circulation in his arms. Mayo refused, saying that he was "told nobody can use the bathroom or do anything until B.I.I. returns." "A short time later," Garcia urinated on himself. Garcia then informed Defendants Brutts, Reese, Evans, and John Doe that he had urinated on himself, asked them to use the bathroom, and told them "that his handcuffs were not double locked," but they refused to take any action. At some point between 9:00 and 9:45 a.m., Evans did loosen Garcia's handcuffs and permit him to use the bathroom, but he was not allowed to clean himself. The search of his cell did not actually occur until 9:45. He was ultimately returned to his cell at 10:00 a.m., but was not permitted to shower until "sometime after 1:00 p.m."

Garcia's prison grievance about the matter was upheld in part, with the respondent allegedly acknowledging a "lack of communication between B.I.I. personnel and SCI-Frackville staff." Nonetheless, Garcia pursued all stages of the grievance process, claiming that he did not receive an adequate remedy for the humiliation of the incident, and for injuries to his hands and arms (which he does not describe in the complaint). Garcia now files this complaint asserting Eighth Amendment claims against nine defendants: Brutts, Mayo, Evans, Reese, and John Doe[2]; Pinky, Kalce, and Brittain, who have supervisory roles at SCI-Frackville; and Berfield, a lieutenant within the Bureau of Internal Investigation. He requests

---

[1] "Double locking" generally refers to a mechanism on handcuffs that prevents the handcuffs from becoming excessively tight on the detainee's wrists. *See, e.g., Gwiazdowski v. Maruca*, No. 22-CV-4303 (KMW-MJS), 2025 WL 1720468, at *1 (D.N.J. June 20, 2025).

[2] The Court infers that the intended defendant is the officer who allegedly refused his request to use the bathroom and loosen his handcuffs, not one of the four "John Does" who initially removed him from the cell.

declaratory and monetary relief, and an injunction ordering that he be "seen by an outside doctor" for injuries to his hands and arms.

## II.    28 U.S.C. § 1915A SCREENING

Under 28 U.S.C. § 1915A, the Court is obligated, prior to service of process, to screen a civil complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197 (3d Cir. 2007). The Court must dismiss the complaint if it fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010). The Court has a similar obligation with respect to actions brought *in forma pauperis. See* 28 U.S.C. § 1915(e)(2). In performing this mandatory screening function, a district court applies the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Mitchell*, 696 F. Supp. 2d at 471; *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588 (W.D. Pa. 2008).

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the amended complaint, as well as "documents incorporated into the complaint by reference, and matters

of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need the court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the amended complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those

allegations for which there is sufficient factual matter to render them plausible on their face."
*Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

With these standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Further, the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

## III.   DISCUSSION

Garcia's complaint alleges Eighth Amendment violations committed by state officials, and therefore falls under 42 U.S.C. § 1983. To succeed on a Section 1983 claim, a plaintiff must demonstrate that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). "A defendant in a civil rights action must have personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Rode*, 845 F.2d at 1207). For these reasons, Garcia's complaint does not state a claim against Pinky, Kalce,

Brittain, or Berfield. Although Garcia refers to a general "lack of communication," the complaint does not contain facts indicating these defendants' personal involvement, nor are they liable merely because of their supervisory roles. *See Rode*, 845 F.2d at 1207. Similarly, because the complaint does not explain how Garcia is receiving inadequate medical treatment for his arm injuries or how any defendant was personally involved in that treatment, any intended claim on that basis will be dismissed.

Turning to the remaining claims, a prisoner's conditions of confinement violate the Eighth Amendment when the deprivation is "sufficiently serious" and deprives him of the "minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The prisoner must demonstrate that prison officials possessed a "sufficiently culpable state of mind" and demonstrated "deliberate indifference" to his health or safety. *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992)). While the experience Garcia describes is extremely unpleasant, his allegations that he was denied access to the bathroom for less than two hours[3] do not suggest a sufficiently serious deprivation or deliberate indifference to his safety. "Although it was understandably embarrassing" that the defendants' actions resulted in Garcia soiling himself, "that additional factor is simply not enough to transform the conduct alleged in the complaint into a constitutional violation." *See Evans-Salter v. Wetzel*, No. 3:19-CV-950, 2020 WL 5819764, at *3 (M.D. Pa. Sept. 30, 2020) ("[C]ourts have continually found that a short period without access to a bathroom does not violate the Eighth Amendment . . . rang[ing] from a few minutes to up to eight hours.") (listing cases); *Randolph-Ali v. City of Harrisburg*, No. 1:10-CV-2387, 2011 WL 864371, at *1, 4 (M.D. Pa. Feb. 17, 2011) (finding

---

[3] Garcia's initial request to use the bathroom came "sometime after 8:00 a.m.," and Evans permitted him to use the bathroom at some point between 9:00 and 9:45 a.m.

no viable Eighth Amendment claim where the plaintiff "had a bowel movement but, being unable to clean herself, was forced to remain in her own feces for hours").[4]

Garcia's allegations that defendants failed to loosen his handcuffs are best understood as claims of failure to intervene in excessive force. The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency. *See Hudson*, 503 U.S. at 8. An excessive force claim turns on whether the force "was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Banks v. Meck*, 531 F. App'x 205, 207 (3d Cir. 2013) (quoting *Hudson*, 503 U.S. at 7). An officer may be liable for failure to intervene in excessive force against a prisoner if the observing officer had a "realistic and reasonable opportunity to intervene" and refused to do so. *See Smith v. Mensinger*, 293 F.3d 641, 650-51 (3d Cir. 2002). However, an objectively *de minimis* use of force cannot sustain an excessive force claim, and therefore cannot sustain a failure to intervene claim. *See Smith*, 293 F.3d at 647-49.

Garcia allegedly complained to numerous defendants "that his handcuffs were not double locked," but this statement would not by itself warn the defendants that he was suffering greater than *de minimis* force, or that the force was unnecessary or malicious. *See*, *e.g.*, *Fears v. Beard*, 532 F. App'x 78, 80, 82 (3d Cir. 2013) (prisoner's complaints of tight handcuffs were insufficient to support a failure to intervene claim). However, the complaint does state a claim against Mayo, the first defendant Garcia complained to. Unlike with the

---

[4] The allegation that Garcia was denied breakfast is also insufficient. *See*, *e.g.*, *Lindsey v. O'Connor*, 327 F. App'x 319, 321 (3d Cir. 2009) ("The purported deprivation of a single meal is not of such magnitude as to rise to the level of a constitutional violation.").

other defendants, Garcia allegedly told Mayo that the handcuffs were "cutting off circulation in his arm," which could support a reasonable inference that Mayo knew Garcia was being subjected to greater than *de minimis* force.[5] Further, Mayo's response that "nobody can . . . do anything until B.I.I. returns," combined with the acknowledged "lack of communication" between the B.I.I. and SCI-Frackville officers, could support an inference that the handcuffs were tighter than necessary for the legitimate penological purpose, and suggests a factual question as to whether Mayo had "a realistic and reasonable" opportunity to intervene.

## IV.    CONCLUSION

The Court will grant Garcia's motion to proceed *in forma pauperis* (Doc. 2), grant him leave to proceed on Eighth Amendment claims against Mayo, and dismiss all other claims, with leave to file a proposed amended complaint. An appropriate Order follows.

**Dated: June 30, 2025**                    *s/ Karoline Mehalchick*
                                            **KAROLINE MEHALCHICK**
                                            **United States District Judge**

---

[5] Although a temporary loss of circulation may itself have been a *de minimis* injury, "*de minimis* injuries do not necessarily establish *de minimis* force." *See Smith*, 293 F.3d at 649.

8